UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MAXIMILIANO SILEONI,<br><br>                    Plaintiff,<br><br>     v.<br><br>ISCI DIRECTOR TEWALT and ISCI<br>WARDEN AL RAMIREZ,<br><br>                    Defendants. | Case No. 1:20-cv-00503-BLW<br><br>**SCREENING ORDER AFTER<br>MARTINEZ REPORT** |

Plaintiff Maximiliano Sileoni filed a prisoner civil rights lawsuit that must be screened by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that state a frivolous or malicious claim, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The screening standard is more fully set forth in the Initial Review Order. Dkt. 14.

After reviewing the Complaint, the Court ordered Defendants to research Plaintiff's claims and submit a Martinez report. In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), rather than dismissing the complaint or requiring service and an answer, the district court ordered prison officials to conduct an investigation of the incident to include an interrogation of those concerned. The transcripts of the interrogations and an explanation by the officials were to be provided to the court to enable it to decide the

**SCREENING ORDER AFTER MARTINEZ REPORT - 1**

jurisdictional issues and make a screening determination under 28 U.S.C. § 1915(a). *Id.* at 319. The United States Court of Appeals for the Ninth Circuit approved the use of Martinez reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008), concluding that, "[a]s a permissible option within its broad discretion, a district court in an appropriate case can issue a Martinez-style order that is reasonably tailored to the pretrial needs of the district court to assess the case."

Plaintiff was provided with an opportunity to respond to the Martinez report, but he filed nothing in response.

## REVIEW OF MARTINEZ REPORT

### 1. Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), incarcerated at Idaho State Correctional Institution (ISCI). He has been diagnosed with depression, manic bipolar disorder, anxiety, schizophrenia, psychosis, and obsessive compulsive disorder. Dkt. 3, p. 2. He alleges that on September 21, 2020, he "had a medical emergency d[ue] to a security breach," and Defendants violated his federal constitutional rights by not providing a call button in his cell to enable him to reach unit staff in an expedited manner. Dkt. 3, p. 3.

The Complaint is devoid of facts. Instead, Plaintiff expands the basis for his cause of action in a separate "Motion on Factual Basis of Claims." Dkt. 10. He alleges that prison employees served him a meal that contained a razor blade, which severely cut his lip. He asserts that he began kicking his door and screaming for help, because he had no call

button in his cell. A correctional officer arrived to help fifteen minutes after he began screaming. Ten minutes after the correctional officer arrived, a nurse evaluated his lip and said he would need stitches. Five minutes after that, a doctor came by and said Plaintiff did not really need stitches, but he would be given a mouthwash to prevent infection. (*Id.*, pp. 5-6.) Plaintiff's lip bled through the next evening of September 22 and then stopped. Plaintiff alleges that because he is in prison for a sex crime, "someone put that razor blade in mix with his food in retaliation to get at him." (Dkt. 10, p. 5.) Prison officials investigated whether someone was targeting Plaintiff or whether, in light of his mental health diagnoses, he was intentionally trying to harm himself with the razor blade.

### 2. Discussion

There is no constitutional right to have an emergency call button in one's prison cell. However, there is a right to have a reasonably timely response to a medical emergency, which must include a way for prisoners to quickly and effectively notify prison staff of an emergency and a way for prison staff to receive the notification and respond without undue delay.

Some prisons have installed emergency call buttons to expedite emergency responses. *See Slocum v. Flower*, 2018 WL 4643086 (D. Nev. Sept. 27, 2018) (observing that when an inmate pushes an emergency call button, that signals "a clear indication that an emergency [is] at hand," and a failure to respond could amount to deliberate indifference); *Peck v. Nevada*, 2018 WL 3312977, at *11 (D. Nev. July 5, 2018), *reconsideration dismissed*, 2018 WL 3845153 (D. Nev. Aug. 13, 2018) (noting that "the

**SCREENING ORDER AFTER MARTINEZ REPORT - 3**

lack of functioning emergency call buttons allows people to die without timely medical assistance.") In other cases, courts have determined that call buttons are not essential so long as other adequate emergency response procedures are in effect in the prison. *See Torres v. Wright*, 2018 WL 1175408 (D. Conn. March 6, 2018); *Garner v. City of Philadelphia*, 2013 WL 4401327 (E.D. Pa. Aug 16, 2013).

### A.      September 2021 Incident

Neither the Complaint nor the prison records accompanying the Martinez Report show that Plaintiff had a life-threatening emergency when he had to call for help for his cut lip, and help did not arrive for fifteen minutes (according to the Complaint). He needed minimal medical care. He received adequate medical care within a timely manner, given the non-serious nature of his injury. Simply based on the allegations in the Complaint and the supplements filed by Plaintiff, these allegations fail to state a claim upon which relief can be granted and will be dismissed with prejudice.

Additional medical records provided by Defendants support this resolution of Plaintiff's Complaint as having timely responded to a non-life-threatening emergency and having provided adequate medical care. *See* Martinez Report and Exhibits to Martinez Report, Dkts. 17, 17-1 to 17-4.

### B.      General Emergency Response Conditions

A prisoner does not have to wait until he or she suffers harm to be able to maintain a lawsuit that identifies a potentially harmful condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (to state a claim under the Eighth Amendment, a plaintiff must show that

**SCREENING ORDER AFTER MARTINEZ REPORT - 4**

he is incarcerated "under conditions posing a substantial risk of serious harm," or that he

has been deprived of "the minimal civilized measure of life's necessities").

Defendants have clarified their emergency request and response policies and

practices for Unit 8. The Unit 8 cells do not have call buttons, but the inmates are closely

supervised. Four IDOC correctional staff work in the unit 24 hours a day, 7 days a week;

a supervisor works in the unit full-time; and a Corizon medical staff person works

between 10 and 12 hours a day in the unit every day. Dkt. 17, p. 3.

Staff check the inmates to confirm their well-being at random intervals of less than

30 minutes apart, 24 hours a day, 7 days a week. Defendants have submitted sample tier

check logs showing the frequency of the checks. Staff also conduct six formal counts

throughout the day. When conducting a count, staff are required to confirm that each

inmate is alive. *Id*., p. 4. Staff also conduct daily temperature checks of inmates and

deliver three meals a day to inmates; staff require inmates to come to the cell door to

received the food tray, where the inmates' well-being can again be confirmed. *Id*., p. 5.

Emergency medical care from Corizon medical staff is available for Unit 8 on a

24-hour basis. *Id*., p. 6. All correctional staff are CPR-trained and -certified. When an

emergency is detected, staff activate the IDOC "Incident Command System (ICS), which

"initiat[es] an emergency medical response system throughout the entire prison" facility.

*Id*., p. 8. Defendants have provided medical records and documentation related to another

incident where Plaintiff complained of chest pains earlier in the day, which demonstrates

how the ICS system works:

**SCREENING ORDER AFTER MARTINEZ REPORT - 5**

> When Sileoni complained of chest pains in Unit 8
> earlier in the day, ISCI staff activated the ICS and called a
> medical emergency. Corizon medical staff immediately
> responded to his cell and assess him, determined that further
> treatment was warranted, and transported him to the ISCI
> medical building where he received further medical care
> including an EKG and medication. In this situation, the ICS
> and medical emergency response system worked exactly as
> intended.

*Id.*, p. 17. Plaintiff did not file a response to the assertions and records provided by

Defendants as to their emergency response system. *See* Dkts. 17-1 to 17-4.

Based on the totality of the record, the Court concludes that Plaintiff has not stated

a claim upon which relief can be granted with his allegations that Defendants are placing

him at a substantial risk of serious harm by not installing emergency call buttons in Unit

8. Therefore, this claim will be dismissed with prejudice.

## ORDER

**IT IS ORDERED** that Plaintiff's Complaint (Dkt. 3) is DISMISSED with

prejudice for failure to state a claim upon which relief can be granted.

DATED: March 14, 2022

B. Lynn Winmill
U.S. District Court Judge